UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA LAPIN,<br><br>    Plaintiff,<br><br>v.<br><br>FRANZISKA JONES, as an individual; BUYGOODS INC.; CLICK SALES INC. dba "CLICKBANK"; JOHN DOE, owner of "Savage Grow Plus Penis enlargement supplement"; and DOES 0-10 who sent 340 emails as part of one or more "affiliate" programs<br><br>    Defendants. | Case No. 1:22-cv-00011-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous motions. Each of the Defendants have filed a Motion to Dismiss. Dkts. 8–10. Plaintiff Joshua Lapin has also filed two Motions to Strike (Dkts. 21, 25) as well as a Motion for Rule 37(e) Sanctions against Defendant BuyGoods Inc. (Dkt. 17).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Defendants' Motions to Dismiss, DISMISSES as MOOT Lapin's Motions to Strike, and DENIES as MOOT Lapin's Motion for Rule 37(e) Sanctions.

## II. BACKGROUND

Plaintiff Joshua Lapin asserts he is a "legal" resident of South Dakota. Dkt. 1, at 2. Lapin explains, however, that he is a "digital nomad" who travels from place to place, working from home, and has no "permanent" residence. *Id.* Under South Dakota law, however, a person can claim South Dakota as their state of residence if they have no permanent address in another state and are continually travelling such as Lapin claims. *Id.* Lapin has a permanent mail address in South Dakota—thus giving him residency there—but "prefers" an address in Wyoming. *Id.* at 1.

Lapin filed his Complaint on January 7, 2022. Dkt. 1. Therein, Lapin alleges he has received at least 340 spam emails advertising a penis enlargement pill labeled "Savage Grow Plus." *Id.* at 2. Lapin states these emails were pornographic and racist in nature (*id.* at 3–4, 65–71), and had forged "from" and "to" lines (*id.* at 6). These emails were sent to three of Lapin's email addresses. Lapin does not seem to have bought the product at any point.

Understandably, Lapin wanted to stop receiving these emails. Apparently, Lapin tried to unsubscribe to the emails but was unsuccessful. He then began a search for the owner of Savage Grow Plus endeavoring to identify the sender of the emails. He was unable to definitively learn the true owner of Savage Grow Plus (and the sender of the emails), but was able to find a Better Business Bureau page for Savage Grow Plus that listed a potential

address. *Id.* at 27, 54, 56. Lapin has not tried to verify if that is the actual address of the company that owns Savage Grow Plus. His search did, however, lead him to the marketplaces where Savage Grow Plus is sold: BuyGoods Inc. and Click Sales Inc.

Lapin identified that both of these marketing companies are incorporated in Delaware. In addition, Lapin found one Boise, Idaho, address for BuyGoods Inc. that he believes is the address for BuyGoods' headquarters. Lapin bases his assertion that the Boise address is BuyGoods' headquarters on his review of third-party websites and the fact that the Boise address appears on BuyGoods own websites. *Id.* at 45; Dkt. 22-1, at 3.

Lapin was also able to determine that Defendant Franziska Jones worked for both BuyGoods Inc. and Click Sales Inc. at some point. Lapin believes Jones to be an officer, potentially the owner, of BuyGoods' supposed headquarters in Boise, Idaho.

Lapin claims that he has contacted both BuyGoods and Click Sales—along with other companies involved with Savage Grow Plus—to determine who really owns Savage Grow Plus and has been told that neither company will divulge that information. Dkt. 1, at 54–56. Without more definitive information Lapin chose to sue both BuyGoods and Click Sales (and Jones) because he believes that each were indirectly involved in sending the offending emails. He has also included a number of unknown "Doe" Defendants hoping to establish their true identities during discovery believing those individuals are the ones who actually sent the spam emails. *Id.* at 54–57.

Lapin seeks monetary relief pursuant to both South Dakota and Idaho laws regarding deceptive spam marketing emails. *Id.* at 64. If both laws are applied successfully, Lapin argues that he should be entitled to upwards of $374,000 in damages. *Id.* at 64. He

MEMORANDUM DECISION AND ORDER - 3

claims that the Idaho law applies to only Defendant Jones and BuyGoods, whereas the South Dakota law applies to all Defendants. *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere

to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

Each Defendant filed a Motion to Dismiss in this case. While there is some overlap in the supporting arguments, the Court will address each in turn for organization and clarity.

### A. Defendant Franziska Jones's Motion to Dismiss (Dkt. 8)

Defendant Jones asserts that Lapin's claims against her should be dismissed because she is not a proper party and because there is no evidence that she took part in sending the offending emails. The Court agrees.

Under Idaho law, a corporation is a separate legal entity, "meaning any person or entity who controls the corporation is not personally liable for the corporation's acts or debts." *Hollingsworth v. Thompson*, 478 P.3d 312, 317 (Idaho 2020). Thus, a corporation protects an individual shareholder, director, and/or officer from liability, except under limited circumstances. *Lunneborg v. My Fun Life*, 421 P.3d 187, 198 (Idaho 2019). An individual director or officer is held personally liable to a victim, only when the individual director or officer "personally participates in [the] tort." *Eliopulos v. Knox*, 848 P.2d 984, 988 (Idaho Ct. App. 1992). "Participation" may be found based on direct action, but also may consist of knowing approval or ratification of the unlawful acts of others. *FTE Networks v. Ivie*, 587 B.R. 729, 736 (Bankr. D. Idaho 2018).

Here, Lapin argues that Jones orchestrated the spam emails because Jones *possibly*

was an officer of BuyGoods at the time he began receiving emails. Dkt. 1, at 46. However, this assertion is the type of fact found in a pleading that is an "unreasonable inference[]" and cannot rebuff a Moton to Dismiss. *Sprewell*, 266 F.3d at 988.

To begin, Jones has explained that she has not worked for either BuyGoods or Click Sales in years. *Id.* at 45–48; Dkt. 8-1 at 5.

Second, even if Jones worked for either company at the time the emails were sent, Lapin presents no evidence indicating what role, if any, she played in sending the emails. Lapin's theory that Jones is potentially the owner of BuyGoods is tenuous at best as the "evidence" he relies on is third party sources and outdated social media profiles. Dkt. 1, at 45–49. But, even taking Lapin's allegations as true, he provides no evidence that Jones even knew of these emails. Lapin seems to believe that if Jones had been president or owner of BuyGoods she would have automatically known these emails were being sent. However, that is an unreasonable inference considering Lapin's acknowledgment that BuyGoods was not directly sending the emails; rather, they were being indirectly sent through third-party affiliates.

Third, and finally, even if Jones was an officer of BuyGoods or Click Sales, and had taken part in sending the emails, her actions would be imputed to the company as explained above.

Thus, Lapin does not present a case against Jones and cannot present one. Not only is his assertion that Jones was an officer of BuyGoods unsubstantiated, but even if she was an officer, BuyGoods (the entity) shields Jones from liability. For these, and other reasons that will be explained in more depth below, the claims against Jones are DISMISSED with

PREJUDICE.

### B. Defendants BuyGoods Inc. and Click Sales Inc.'s Motions to Dismiss (Dkts. 8–9)[1]

#### 1. *Failure to State a Claim*

First, BuyGoods and Click Sales begin by stating that Lapin has not stated a plausible claim for relief against either entity.

To state a claim upon which relief can be granted, a Plaintiff must seek relief from the individual or entity he or she believes, in good faith, is legally liable to provide that relief. *Ashcroft*, 566 U.S. at 678. And to survive a motion to dismiss for failure to state a claim, the plaintiff's allegations must describe more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Despite the number of screenshots provided as evidence, Lapin has failed to bring a case against either BuyGoods or Click Sales. Simply put, Lapin's "evidence" fails to show that BuyGoods or Click Sales legally harmed him. The facts of the case illustrate that both BuyGoods and Click Sales are marketplaces for the "Savage Grow Plus" product. Dkt. 1, at 24–39. The owner of "Savage Grow Plus" (and potentially "affiliates" of BuyGoods and Click Sales) marketed the product through spam emails to Lapin. *Id.* at 3–4. But neither BuyGoods nor Click Sales sent those emails. *Id.* at 6, 8–21. Lapin tries to argue that because BuyGoods and Click Sales hired "affiliates" to advertise products on

---

[1] Defendants BuyGoods and Click Sales raise similar arguments in their respective Motions to Dismiss. For organization and economy, the Court will address the motions in tandem.

MEMORANDUM DECISION AND ORDER - 7

their marketplace this somehow demonstrates they are sending the spam emails. Dkt. 22-1, at 2–3. Even assuming this is how either business operated, these "affiliates" are not employees of BuyGoods or Click Sales; instead, it appears they are contracted by the two companies to advertise products on their marketplaces. Dkt. 1, at 12. At most, however, this evidence shows that BuyGoods and Click Sales—online platforms for processing and selling third-party products—chose to allow questionable retailers and/or affiliates onto their marketplace. But that does not mean they can be held liable for emails from those third-party retailers and/or affiliates.

Second, BuyGoods and Click Sales assert Lapin's claims fail under both South Dakota and Idaho law. The Court turns next to these statutes.

Regarding deceptive email practices, the South Dakota Deceptive Trade Practices and Consumer Protection Law states:

> No person may advertise in a commercial e-mail advertisement either sent from or sent to a south Dakota electronic mail address under any of the following circumstances. . .
>
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information;
>
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

S.D. Codified Laws § 37-24-47. By Lapin's own admission, BuyGoods and Click Sales did not send him any of the offending emails. Thus, even if the emails were in violation of South Dakota law, unless Lapin can prove BuyGoods or Click Sales sent the emails, he has no claim.

Lapin's claim similarly fail under Idaho law. The Idaho Consumer Protection Act

MEMORANDUM DECISION AND ORDER - 8

delineates when a person may seek relief from spam advertisers:

> (2) Any person who uses an interactive computer service to initiate or cause the sending or transmittal of any bulk electronic mail advertisement shall provide an electronic mail address readily identifiable in the bulk electronic mail advertisement to which the recipient may send a request for declining such mail.
>
> (3) It is unlawful for a person to use an interactive computer service to initiate or cause the sending or transmittal of any bulk electronic mail advertisement to any recipient that the sender knows, or has reason to know, engages in any of the following:
>
>> (a) Uses the name of a fictitious name of a third party in the return address field without the permission of the third party.
>>
>> (b) Misrepresents any information in identifying the point of origin of the transmission path of the bulk electronic mail advertisement.
>>
>> (c) Fails to contain information identifying the point of origin of the transmission path of the bulk electronic mail advertisement.
>>
>> (d) Sends or transmits, at any time after five (5) business days of a declination, any bulk electronic mail advertisement to a recipient who provided the sender with a request declining the receipt of such advertisements.
>
> (4) Pursuant to section 48-608, Idaho Code, a recipient that receives a bulk electronic mail advertisement in violation of this section may bring an action to recover actual damages. The recipient, in lieu of actual damages, may elect to recover from the person transmitting or causing to be transmitted such bulk electronic mail advertisement the greater of one hundred dollars ($100) for each bulk electronic mail advertisement transmitted to the recipient in violation of this section or one thousand dollars ($1,000).

Idaho Code § 48-603E(2)–(4). Lapin contends this law does not apply to Click Sales, but only to BuyGoods because he believes BuyGoods is headquartered in Idaho and sends him emails from Idaho. Dkt. 1, at 62. However, this law still does not apply to BuyGoods because BuyGoods did not initiate sending the spam emails and Lapin did not buy the product.

The Court's analysis regarding South Dakota law rings true under Idaho law as well.

MEMORANDUM DECISION AND ORDER - 9

As noted, BuyGoods supports a marketplace that sellers may use to sell their products. But BuyGoods does not market the products. Lapin again tries to show that BuyGoods hires "affiliates" who advertise products on BuyGoods' marketplace. Dkt. 1, at 12. As noted, though, From the evidence *Lapin produced*, these affiliates appear to be contracted third-parties, not employees of BuyGoods. *See id*. The fact that BuyGoods has hired third-parties to advertise does not mean that they sanction the use of deceptive spam emails to market products. Lapin's "evidence" is not sufficient to show that BuyGoods caused the emails to be sent.

Additionally, the Idaho Supreme Court has clarified that in order to have a claim under Idaho Code § 48-603E(4), there must be a contract between the sender of the emails and the recipient. *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010). One way that there could be a contract is if the recipient bought the product that is being advertised—since buying a product creates a legal contract. Here, Lapin does not allege that he ever bought the "Savage Grow Plus" penis enhancement pills. *See* Dkt. 1. Thus, there was no contract and Lapin fails to make a claim under the Idaho law.

Ultimately, Lapin seems to believe that an entirely different entity owns "Savage Grow Plus." He purportedly has this other company's address, name, and other relevant information. *See id*. at 21. Lapin has also stated he believes this other entity to be the owner of "Savage Grow Plus," but wants BuyGoods and Click Sales to confirm this belief. *Id.* This demonstrates that Lapin is aware that BuyGoods and Click Sales are the wrong parties to hold accountable.

Thus, the claims against BuyGoods and Click Sales must be DISMISSED with

PREJUDICE because BuyGoods and Click Sales are clearly the incorrect parties to hold accountable for the spam emails and Lapin cannot state a plausible claim for relief against either entity.

### 2. Jurisdiction

Even if Lapin successfully stated a claim upon which relief could be granted, the Court does not have the proper jurisdiction to adjudicate this claim. The District of Idaho does not have personal jurisdiction over BuyGoods nor does it have diversity jurisdiction over Click Sales.[2]

#### a. Personal Jurisdiction

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating that jurisdiction is appropriate." *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *Boschetto v. Hansing*, 539 F.3d 1101, 1015 (9th Cir. 2008). The Idaho Supreme Court has determined that Idaho's long-arm statute (Idaho Code § 5-514) allows a broader application of personal jurisdiction than is permitted under the Due Process Clause. *See generally Smalley v. Kaiser*, 950 P.2d 1248

---

[2] While both arguments apply to both Defendants, BuyGoods focuses on personal jurisdiction while Click Sales focuses on diversity jurisdiction. Thus, to avoid repetition, the Court will address the matters individually as raised. Again, however, there is substantial overlap in their application as to these two Defendants.

(Idaho 1997). Thus, the Court need only decide whether asserting personal jurisdiction complies with due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

There are two types of personal jurisdiction—general and specific. *Lake*, 817 F.2d at 1420. Under either type, due process requires a defendant to have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

Because Lapin has only raised arguments about general jurisdiction[3] (and the Defendants have focused mainly on that point in their Motions to Dismiss), this Court will follow suit.

General jurisdiction is exercised by a state when the defendant has contacts with the forum that are so "continuous and systematic" as to render the defendant "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). For a

---

[3] Lapin discusses "specific and general jurisdiction" (Dkt. 22-1, at 3) but does not appear to recognize the difference as his argument is only related to general jurisdiction.

MEMORANDUM DECISION AND ORDER - 12

corporation, "unique" and "easily ascertainable" affiliations with a forum include its principal place of business and its place of incorporation. *Id.* Outside these limited affiliations, general jurisdiction is appropriate only when the defendant's relationship with the forum is so continuous and systematic that the defendant is reasonably regarded as "at home" there. *Daimler*, 571 at 134. The party opposing a motion to dismiss under the Federal Rules of Civil Procedure bears the burden of showing jurisdiction is appropriate. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1118 (D. Idaho 2009) (citing *Boschetto*, 539 F.3d at 1011).

Lapin points to BuyGoods' Boise mailing address (the "headquarters" of BuyGoods) and the fact that Defendant Jones (who he believes to be the owner of BuyGoods) is a citizen of Idaho as justification for the Court's exercise of personal jurisdiction over BuyGoods. Dkt. 22-1, at 2–3. Lapin used the Better Business Bureau and publicly available websites to locate this information. *Id.* However, a mailing address and a former employee is not enough to establish the continuous and systematic contact with the forum state that is needed to consider BuyGoods "at home." *Daimler*, 571 at 134.

Furthermore, BuyGoods explains it is actually headquartered outside of the United States in Malta. BuyGoods agrees that they are incorporated in Delaware, but that the Boise address is not an office, rather a mail stop run by a third-party service. BuyGoods explains that it does have employees in the United States, but they are in Nevada, not Idaho. Dkt. 10-1, at 3. It asserts it has no exceptional ties to Idaho beyond the mailing address, but does recognize that a *former* employee, Jones, lives in the state. Dkt. 36, at 3.

Several courts have specifically held the maintenance of a post office box or receipt

MEMORANDUM DECISION AND ORDER - 13

of mail in the forum state does *not* create general personal jurisdiction. *See Sussman v. Resort*, 2020 WL 5223751, at *3 (C.D. Cal. May 14, 2020) (finding defendant's use of California post office box and advertisement on website accessible in California were not sufficient to constitute "continuous and systematic" contacts in California); *Vacless Sys. v. Vac-Alert IP Holdings, LLC*, 2011 WL 13217924, at *3 (C.D. Cal. 2011) ("[C]ourts have found contact by mail or the maintenance of a post office box are insufficient to create general personal jurisdiction").

Thus, Idaho does not have personal jurisdiction over BuyGoods simply because it has a mailing address here.[4] The District of Idaho is an inappropriate forum for this case because BuyGoods does not have any substantive ties to the state of Idaho. Thus, this case must be DISMISSED for lack of personal jurisdiction over BuyGoods.

### b. Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. This Court can only hear cases and controversies that involve a federal question (28 U.S.C. § 1331) or satisfy federal diversity jurisdiction requirements (28 U.S.C. § 1332). The Court will have original jurisdiction "of all civil action arising under the Constitution, laws, or treaties of the United States." *Id.* Additionally, the Court will have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

---

[4] A similar analysis applies to Click Sales—a Delaware company with limited contacts in Idaho. The Court, however, will not re-analyze the issues as applied to Click Sales because Click Sales focuses its jurisdictional argument on diversity and subject matter jurisdiction.

MEMORANDUM DECISION AND ORDER - 14

Lapin makes no argument regarding federal question jurisdiction, so diversity jurisdiction must be met to proceed. Diversity jurisdiction exists when there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity exists if none of the plaintiffs is a citizen of the same state as any of the defendants. *Caterpillar*, 519 U.S. at 68; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). A corporation is a citizen of the state "by which it has been incorporated" and the state "where is has its principal place of business." 28 U.S.C. § 1332(c)(1); *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997).

Here, Lapin acknowledges that the Idaho-based cause of action is less than $75,000, but asserts that if he adds in the South Dakota claim, he meets the threshold. Adding the two purported damages amounts together is not allowed, however, as the underlying conduct is one in the same.

Lapin seeks what can only be described as a double recovery. He seeks damages stemming from the spam emails under both Idaho and South Dakota law. He argues he is allowed to do this under the "doctrine of dépeçage," which permits a court to apply laws from different jurisdictions when a state's choice of law rules force courts to apply different jurisdictions' laws to two separate issues. Dkt. 22-1, at 8.

To begin, typically the doctrine of dépeçage is only applied when the two separate issues are (1) the underlying claim, and (2) the attorney's fees resulting from the lawsuit. Such is not the case here. Lapin seeks to recovery under both Idaho and South Dakota law *but for the same underlying conduct.* This is inappropriate and the doctrine of dépeçage

does not apply.

Second, there is no choice of law problem here. Or in the very least, it is immaterial to the Court's conclusion today. Lapin's injury—by his own admission—occurred in various locations because he is a travelling nomad. Lapin's only tie to South Dakota is a rented mailbox that, by his own admission, he does not check. Thus, South Dakota law holds little sway in this case. Lapin's connections to Idaho do not fair much better, but at least one Defendant, Jones, resides in the state.[5] In either event, because the Court has already determined it does not have personal jurisdiction over the Defendants and Lapin has failed to state a plausible claim for relief, there is no need to make a firm decision regarding choice of law. But the fact remains that the amount in controversy in this case does not exceed $75,000 as required.[6]

### C. Motions to Strike

Lapin initially filed two Motions to Strike seeking to strike various information filed in support of Defendants' Motions to Dismiss. Dkts. 21, 25. Lapin later conceded, however, that his Motions to Strike were inappropriate. Dkt. 42, at 1. Thus, the Court DISMISSES both of these motions as MOOT.

### D. Conclusion

Normally the Court would grant leave to amend in order to allow Lapin an

---

[5] And Lapin filed this lawsuit in Idaho.

[6] Defendants also argue the CAN-SPAM Act pre-empts Lapin's claims. Because the Court is dismissing the case for two independent, foundational reasons (jurisdiction and failure to state a claim) it need not analyze a third reason. Suffice it to say, the Court agrees Lapin's claims are preempted by the CAN-SPAM Act. *See* 15 U.S.C. § 7707(b).

opportunity to remedy the deficiencies outlined above. It will not do so in this case, however, because Lapin admits he has sued the incorrect defendants. And even if the current Defendants were the correct Defendants, Lapin has failed to state a viable cause of action against any of them. What's more, the Court lacks jurisdiction over the named-Defendants and over the claims at issue. In sum, this case must be DISMISSED with PREJUDICE.

As a result of this ruling, Lapin's Motion for Rule 37(e) Sanctions (Dkt. 17) is DENIED as MOOT because there will be no discovery in this case.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendants' Motions to Dismiss (Dkts. 8, 9, 10) are GRANTED.

2. Lapin's Motions to Strike (Dkts. 21, 25) are DISMISSED as MOOT.

3. Lapin's Motion for Rule 37 (E) Sanctions (Dkt. 17) is DENIED as MOOT.

4. All Lapin's claims are DISMISSED with PREJUDICE.

5. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

6. This case is CLOSED.

DATED: October 14, 2022

David C. Nye
Chief U.S. District Court Judge